UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

───────────────────────────────────────────────

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                    Case No. 11-cr-204-pp

DERRICK L. SANDLES,

        Defendant

───────────────────────────────────────────────

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR EARLY DISCHARGE FROM SUPERVISED RELEASE (DKT. NO. 450)**

───────────────────────────────────────────────

      On October 29, 2012, the defendant signed a plea agreement admitting that between January 2007 and October 2010, he conspired with others to possess with intent to distribute and to distribute five kilograms or more of cocaine and marijuana. Dkt. No. 208. On September 2, 2014, Judge Rudolph T. Randa sentenced the defendant to serve sixty-five months in custody followed by five years of supervised release. Dkt. Nos. 345, 346. The defendant began serving that five-year supervised release term on May 21, 2018; he has served just over three years of the term. Dkt. No. 454 at 1.

      The defendant has asked the court to terminate his supervised release term early. Dkt. No. 450. He explains that he has had no violations of his supervised release, that all his drug tests have been negative, that he has maintained a stable residence and has kept a steady job. Id. at 2. Currently he owns and operates a car dealership, which he has operated for the past two years. Id. He says that he attended and completed programming while in custody and since being released has completed the Thinking for Change

1

program. Id. He also indicates that he has performed community service through Motivating All Youth, Inc. Id. Finally, the defendant says that he would "prefer an in-person (versus a video) hearing with respect to this motion." Id. at 3.

The defendant attached to his motion four certificates of completion for prison programs—a resume class completed in May 2015, the Residential Drug Abuse Program completed October 19, 2015, the 7 Steps program at FCI Oxford completed May 4, 2016 and a follow-up to the RDAP program completed over the year between October 19, 2015 and October 20, 2016. Dkt. No. 450-1 at 3-6. He also attached a certificate confirming that he completed the Thinking for Change program on July 14, 2020. Id. at 2. Finally, he attached a letter from Akesha Burks, the CEO of Motiving All Youth, Inc. Id. at 1. She explains that Motivating All Youth, Inc. is a "non-profit, service organization aimed at bridging the gap between children of all abilities." Id. Ms. Burks describes a number of the fundraising efforts the organization holds throughout the year and the causes the fundraising proceeds support. With regard to the defendant, Ms. Burks states:

> Derrick Sandles has served as a responsible and reliable volunteer with M.A.Y. since 2019. During his service within the organization, Derrick has served on the Fundraising Planning Committee. One of the major fundraising efforts, Derrick assisted with support for [name], a 10-year-old youth program participant awaiting a heart transplant. In addition to the organization's efforts, during [name's] hospitalization, Mega Motors [the defendant's auto dealership] fulfilled all requests associated with [the participant's] wish list in the interest of exceeding the family's needs and providing the youth's wants as well.
>
> Additionally, he has served as a positive, uplifting, and encouraging inspiration to many youth. He has been a pleasure to mentor and to be around, and the mere act of giving back and being surrounded by positive individuals and exposed to those with the lifestyles and challenges as the youth serviced by Motivating All Youth has had a

2

> beneficial and life-altering impact on Derrick—one I hope he will take with him as a role model to impart transformation and positive influence on his male peers and counterparts.

Id.

The government objects to the motion. Dkt. No. 452. It argues, citing cases from this district, that the defendant is asking for early termination based solely on the fact that he has followed the rules of supervision, and it asserts that this is not enough. Id. at 2. It observes that the program certificates the defendant attached to his motion were from programs he completed in prison and that completing Thinking for Change was a condition of his supervision. Id. The government also asserts that the 18 U.S.C. §3553(a) factors militate against early termination. Id. at 3. It argues that in this case alone, the defendant was involved in a multiple-year conspiracy and was personally responsible for distributing kilograms of cocaine; it also points out that the defendant became involved in the instant offense while on extended supervision for a state drug-trafficking offense. Id. The government opposed the defendant's request for a hearing. Id.

Probation confirms that the defendant has been self-employed, has maintained a residence with his girlfriend and has provided negative urine screens. Dkt. No. 454 at 1. It confirms that he completed Thinking for Change. Id. Probation indicates that it was not aware of any community service prior to the defendant filing this motion. Id. at 2. It also notes that despite multiple requests, the defendant has not provided copies of his tax returns to probation. Id. at 1.

The defendant filed a reply, disputing the government's assertion that he needs to do more than comply with the conditions of supervision to warrant early termination. Dkt. No. 453. He asserts that he has gone above and beyond

3

by volunteering at Motivating All Youth, Inc., and asserts that Ms. Burks's letter "sets forth in great detail the type and amount of volunteer work performed by [the defendant] while on supervision." Id. at 2. The defendant also argues that the court should hold a hearing on the motion, asserting that "if a Court is going to consider a motion of this nature, [] the Court should see the requesting party in person to examine his demeanor and acumen in order to make a well reasoned decision on whether or not to grant such a motion." Id. He says that the court must "determine if the interests of justice should allow for such a ruling by seeing the person making such a request," and asks "[w]hat better way to make a final determination than to see and perhaps question the requesting party in a personal setting." Id.

The court declines to hold a hearing on the defendant's motion. Fed. R. Crim. P. 43 governs the circumstances under which a criminal defendant's presence is required. A defendant must be present at the initial appearance, the initial arraignment, the plea, every stage of trial and sentencing. Fed. R. Crim. P. 43(a). A defendant's presence is not required when "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." Fed. R. Crim. P. 43(b)(4). If a defendant does not have the right to be present for the court's determination of whether to reduce the incarceration component of his sentence, he does not have the right to be present (in person or by video) when the court determines whether to effectively reduce the imposed term of supervised release.

From a practical standpoint, the court has received many such motions over the years. It never has held a hearing on such a motion, because 18 U.S.C. §3583(e)(1) says that the court must determine whether early termination is "warranted by the *conduct of the defendant released* and in the

4

interest of justice." The court is able to determine the "conduct of the defendant released" from the pleadings and if not, it can ask for more information.

As to the motion itself, the government is correct that it takes more than just following the rules of supervision for a court—this court, at least—to grant early termination of supervised release. As this court explained in United States v. Cairo,

> Under 18 U.S.C. § 3583(e)(1), a district court may terminate a defendant's supervised release after the defendant has served one year if, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," the court finds that early termination is "warranted by the conduct of the defendant released and in the interest of justice." 18 U.S.C. § 3583(e)(1). Judge Lynn Adelman considered this provision in United States v. O'Hara, Case No. 00-cr-170, 2011 WL 4356322 (E.D. Wis. Sept. 16, 2011), and paraphrased it as containing three requirements:
>
> > (1) the defendant has served at least one year of supervision;
> >
> > (2) the government is given notice and an opportunity to be heard; and
> >
> > (3) termination is in the interest of justice based on the pertinent § 3553(a) factors and the defendant's conduct.
>
> United States. v. O'Hara, No. 00-CR-170, 2011 WL 4356322, at *3 (E.D. Wis. Sept. 16, 2011) (citing United States v. Medina, 17 F. Supp. 2d 245, 245-46 (S.D.N.Y. 1998) and United States v. Lowe, 632 F.3d 996, 998-99 (7th Cir. 2011)). While noting that district courts "possess[] wide discretion in making [the] determination [whether to terminate supervised release early,]" Judge Adelman cautioned that courts have held "that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination." O'Hara, 2011 WL 4356322, at *3 (collecting cases). The defendant carries the burden of proving that she has done more than just follow the rules. Id., citing United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006). The district court need not make explicit findings on each of the relevant § 3553(a) factors, but must give some indication

5

that it considered those factors. See Lowe, 632 F.3d at 998, citing United States v. Carter, 408 F.3d 852, 854 (7th Cir. 2005); United States v. Hale, 107 F.3d 526, 530 (7th Cir. 1997); and United States v. Nonahal, 338 F.3d 668, 671 (7th Cir. 2003).

United States v. Cairo, No. 16-CR-81-pp, 2017 WL 3484946, at *2 (E.D. Wis. Aug. 14, 2017).

The defendant has served more than one year and the government has been given notice and an opportunity to be heard. The question is whether, after considering the relevant §3553(a) factors, the conduct of the defendant and the interests of justice warrant early termination. The court must start, then, with the relevant §3553(a) factors.

Section 3553(a)(1) requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant. The PSR indicates that in 2009, law enforcement began an investigation of the drug trafficking activities of someone named Jason Harvey; law enforcement believed his organization was bringing kilogram quantities of cocaine and marijuana from Chicago to Milwaukee and distributing it to dealers in the Milwaukee area. Dkt. No. 257 at ¶10. The report states that, "[a]t times, Derrick Sandles, a codefendant, pooled his money with Mr. Harvey's cash in order to obtain kilogram quantities of cocaine from Mr. Harvey's Illinois source." Id. The report reveals that on at least one occasion in 2010, "Mr. Harvey cooked the cocaine into crack cocaine with Mr. Sandles . . . ." Id. at ¶11. The report describes an incident at the end of December 2009 when the defendant had a conversation with a confidential informant at the defendant's car wash, describing one of Jason Harvey's cocaine transactions with a supplier. Id. at ¶23. It describes a statement by an informant that that same month, Harvey asked the defendant to accompany the informant to Chicago to bring money to Harvey for the purpose of purchasing cocaine. Id. at ¶24.

6

But the most relevant information in the report indicates that for some eight to nine months in 2009 and 2010, Jason Harvey sold the defendant cocaine every week or every other week, in amounts anywhere from 4.5 ounces to 13.5 ounces, with a typical sale being nine ounces. Id. at ¶32. The government's conservative estimate of the amount of cocaine the defendant bought from Harvey or pooled money with Harvey to buy was 12.2 kilograms. Id. at ¶33.

This was a serious offense. On the positive side, it did not appear to involve guns or violence. On the negative side, however, the defendant was responsible for moving a significant amount of cocaine into the Milwaukee area over an extended period. The defendant admitted that he committed the offense because he was associating with the wrong people and because he needed money, having just been released from prison and finding it hard to get a job. Id. at ¶92.

As to the defendant's history and characteristics, the PSR indicates that the defendant's criminal history began in 1992 at age 16. Id. at ¶106. While three of his six adult convictions were for operative after revocation, one involved a high-speed chase through traffic, id. at ¶107, and in 2001, he was convicted in Milwaukee County Circuit Court for possession with intent to distribute cocaine, id. at ¶112. The cocaine conviction resulted in a sentence of six years of initial confinement followed by six years of extended supervision; the defendant was released to extended supervision in January 2008 and began his participation in the federal crime of conviction in 2009. Id. at ¶112. So, as the government points out, the defendant was under supervision when he committed the offense of conviction, and was under supervision for having committed a similar offense.

7

The PSR indicates that the defendant had a work history at the time of sentencing, both working jobs for others (such as working at Candyland for about a year in 2000-2001 and at Target for two months as a seasonal worker in 2011) and for himself (running, at various times, a car wash, a detailing company and a delivery service). Id. at ¶¶144-150.

In considering the defendant's history and characteristics, the court also considers his time in prison and on supervision. The defendant completed four programs during just under four years in prison—a resume-writing program, the intensive RDAP program, a follow-up to RDAP and the 7-step program. This shows that the defendant made some use of his time in prison. The court has no evidence of his disciplinary history while in custody. Since his release, the defendant has had no violations, has stayed drug-free and has been self-employed with a stable residence. The court commends the defendant for following the rules of supervision, especially given that he did not follow the rules of extended supervision after his state-court cocaine conviction. The defendant has completed the Thinking for Change program. These actions show that the defendant is committed to being a productive, "pro-social" member of society. He should be proud of himself. Completing the RDAP program and the follow-up also commendable, and hopefully the skills he learned in that program are helping the defendant stay drug-free now.

Section 3553(a)(2)(B) requires the court to consider the need for the sentence imposed to afford adequate deterrence to criminal conduct. The defendant's offense level was 29 and his criminal history category was III, resulting in an advisory guideline sentencing range of 108 to 135 months (nine years to eleven years and three months), with a ten-year statutory mandatory minimum. Dkt. No. 257 at ¶157. He received a sentence of sixty-five months—

8

Case 2:11-cr-00204-PP   Filed 07/21/21   Page 8 of 11   Document 455

almost half the mandatory minimum. While the length of a criminal sentence is not necessarily a deterrent for many, supervision sometimes is. While the defendant has followed his supervised release conditions, many defendants struggle on supervised release and want to avoid being under supervision. To that end, the term of supervision can be a deterrent.

Section 3553(a)(2)(C) requires the court to consider protection of the public from further crimes of the defendant. So far, it does not appear that that is a factor that weighs against early termination.

Section 3553(a)(2)(D) requires the court to consider the need to provide the defendant with needed educational or vocational training, medical care or other correctional treatment. Judge Randa felt that the defendant needed assistance in decision-making skills, and he ordered that the defendant must participate in a cognitive intervention program. Dkt. No. 346 at 4. The defendant has completed that program. Judge Randa also ordered the defendant to cooperate in the payment of any child support arrearages. Id. The court is unaware of the status of any such arrearages. The defendant already had earned his HSED before Judge Randa sentenced him, dkt. no. 257 at ¶142, and Judge Randa did not order any educational or vocational conditions.

As for §3553(a)(4), Judge Randa and this court have taken into account the kinds of sentences and sentencing ranges applicable. And the court did not order restitution, so §3553(a)(7) is not applicable.

That brings the court to the conduct of the defendant. The only thing the defendant mentions in his motion that does not fall under the category of following the required conditions of supervision is his participation with Motivating All Youth, Inc. The defendant stated in his reply brief that Ms. Burks, the CEO of Motivating All Youth, Inc., went into great detail in her letter

about the type and amount of community service the defendant has done with that organization. With no disrespect to Ms. Burks or defense counsel, the court cannot agree. Ms. Burks's letter is dated July 23, 2020—a year ago. Dkt. No. 450-1 at 1. It says that the defendant had been a volunteer since "2019." Id. The court cannot tell from that statement how long the defendant had been a volunteer—it could have been as little as seven months or as long as nineteen. Nor does the court know whether the defendant continued working with the organization beyond July 2020. Ms. Burks indicates that the defendant served on the fundraising planning committee, but does not explain what this entailed. How frequently did the committee meet? Did committee members also participate in the fundraising events themselves? Did the defendant help set up for events? Did he help transport people to and from events? Ms. Burks says that the defendant "assisted with support" for a boy awaiting a heart transplant. It is not clear what this means. She says that while the young man was hospitalized, the defendant's auto dealership "fulfilled all requests associated with [the child's] wish list." Id. It sounds as though the defendant's business contributed money or gifts to the young man. That is generous and kind. But it points to the concern that probation has expressed—the fact that despite repeated requests, the defendant has not provided probation with tax returns. If the defendant's auto dealership is doing a booming business and he is doing well enough to make charitable contributions, that is a wonderful thing. But the court presumes that probation cannot determine whether that is the case unless it has the defendant's tax returns.

  Finally, the defendant has not explained why he needs early termination. The court has had defendants who ask for early termination because it

10

Case 2:11-cr-00204-PP   Filed 07/21/21   Page 10 of 11   Document 455

interferes with their ability to obtain jobs, or because they want to move out of state to be with family, or because it prevents them from traveling for work. The defendant has not identified any reason that continued supervision hinders him from moving on with his life.

The court agrees with the government that at this point, the defendant has not demonstrated that early termination is warranted by his conduct or in the interests of justice. That is not to say that the defendant does not have much to be proud of. He clearly has made changes from the way he was living his life before he went to prison and the court applauds him for that. Nor is the court saying that it would never grant early termination of the defendant's supervised release. The court is denying this motion without prejudice, meaning that the defendant may again seek early termination in the future. If he provides probation with the tax returns it has requested, and if he provides the court with evidence that he is going above and beyond compliance with the conditions of his supervision, the court would be more than happy to consider a future motion.

The court **DENIES** the defendant's motion for early discharge from supervised release. Dkt. No. 450.

Dated in Milwaukee, Wisconsin this 21st day of July, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**